**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

AMY PASS,

               Plaintiff,

v.                                           No. CV 21-248 CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

               Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** is before the Court on Plaintiff Amy Pass's *Motion to Reverse and Remand, with Supporting Memorandum* (the "Motion"), (Doc. 21), filed October 4, 2021; Defendant Commissioner Kilolo Kijakazi's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 25), filed January 5, 2022; and Ms. Pass's *Reply in Support of Motion to Reverse* (the "Reply"), (Doc. 26), filed January 19, 2022.

Ms. Pass filed an application for disability insurance benefits on January 8, 2018, alleging disability beginning September 27, 2010. (Administrative Record "AR" 10, 92). In her application, Ms. Pass claimed she was unable to work due to a bad knee, arthritis, thyroid problems, migraines, possible fibromyalgia, chronic pain, PTSD, depression and anxiety. (AR 93). Ms. Pass's application was denied initially on March 21, 2018, and upon reconsideration on September 12, 2019. (AR 99-100, 112). Ms. Pass requested a hearing before an Administrative Law Judge ("ALJ"), which was held

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

on August 24, 2020, via phone due to the covid-19 pandemic, before ALJ Ben Barnett. (AR 10-22).

At the hearing, Ms. Pass appeared before ALJ Barnett with her attorney Feliz Martone and impartial Vocational Expert ("VE") Howard J. Marnan. (AR 10). ALJ Barnett issued his decision on September 17, 2020, finding Ms. Pass not disabled at any time between the alleged onset date and the date she was last insured, June 30, 2016. (AR 22). Ms. Pass then requested review of ALJ Barnett's decision before the Appeals Council, which was denied on January 22, 2021. (AR 1). Ms. Pass now challenges ALJ Barnett's September 17, 2020 decision denying her claim for disability insurance benefits. *See* (Doc. 21).

Ms. Pass, currently represented by Feliz Martone and Gary Martone, argues in her Motion that her case is subject to remand for two reasons: (1)  ALJ Barnett erred by failing to consider properly the medical opinion of Laura Wertheimer Hatch, MD; and (2) ALJ Barnett failed to comply with SSR 82-62 as he failed to provide the required findings regarding the physical and mental demands of Ms. Pass's past relevant work. (Doc. 21 at 9-10). On January 21, 2022, Ms. Pass filed her *Unopposed Motion for Oral Argument*, (Doc. 28), which the Court granted on June 6, 2022. (Doc. 33). Upon communication from counsel, however, Ms. Pass withdrew her request for oral argument.

The Court has reviewed the Motion, the Response, the Reply, the relevant law, and the Court has meticulously reviewed the administrative record. Because the Court finds that ALJ Barnett did not commit reversible legal error as alleged by Ms. Pass, the Court finds Ms. Pass's Motion shall be **DENIED** and the case shall be **DISMISSED**

**WITH PREJUDICE**.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v.*

*Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

4

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520 (a)(4)(i–iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## III.   Background

In her application, Ms. Pass claimed she was limited in her ability to work due to a bad knee, arthritis, thyroid problems, migraines, possible fibromyalgia, chronic pain, PTSD, depression and anxiety. (AR 93). At step one, ALJ Barnett determined Ms. Pass had not engaged in gainful activity between September 27, 2010, the alleged onset date, through June 30, 2016, her date last insured. (AR 12). At step two, ALJ Barnett found Ms. Pass had the severe impairments of obesity, hypothyroidism, uterine mass, bilateral knee chondromalacia, status-post left partial medial meniscectomy, bilateral carpal tunnel syndrome, status-post bilateral release, and left shoulder partial tear. (AR 13).

At step three, ALJ Barnett determined Ms. Pass's impairments, solely or in

combination, did not meet or equal one of the listed impairments in 20 C.F.R.

§§ 404.1520(d), 404.1525, or 404.1526. (AR 14). ALJ Barnett then found Ms. Pass has

the RFC to perform light work, with the following additional restrictions:

> [S]he can occasionally climb[] ramps and stairs but no climbing of ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently perform bilateral handling and fingering, and frequent left arm overhead reaching.

(AR 15). In formulating Ms. Pass's RFC, ALJ Barnett stated he considered her

symptoms and the extent to which those symptoms could reasonably be accepted as

consistent with objective medical and other evidence, as required by 20 C.F.R.

§ 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 15). ALJ Barnett stated he

also considered opinion evidence, consistent with the requirements of 20 C.F.R.

§ 404.1520c. (AR 15). He concluded that while Ms. Pass's impairments could be

expected to cause her alleged symptoms, the intensity, persistence, and limiting effects

Ms. Pass described were not entirely consistent with the evidence in the record. (AR 15-

16).

    In evaluating the evidence, ALJ Barnett found the opinion of state agency

medical consultant Laurence Ligon, MD, finding nonsevere impairments, to be

unpersuasive as he found this opinion to be "not supported by the record" and "not

consistent with the longitudinal record" which showed greater impairments. (AR 18-19).

For the same reason, ALJ Barnett found the opinion of state agency medical consultant

David Coffman, MD, that there was insufficient evidence to assess Ms. Pass's

condition, to be not persuasive. (AR 18-19). However, ALJ Barnett found the opinions of

Dr. Ligon and Dr. Coffman that Ms. Pass did not have a medically determinable mental

impairment prior to the date last insured to be persuasive, as "[t]hese findings were

6

supported by the lack of significant evidence with respect to [Ms. Pass's] mental functioning, and are likewise consistent with the record as a whole." (AR 13).

ALJ Barnett also found the opinion of examining consultant Dr. Hatch to be not persuasive, because he found her opinion to be "not entirely consistent with the longitudinal evidence of record, including subsequent records and testimony at the hearing." (AR 19). ALJ Barnett also noted that this opinion was "authored approximately four years before the end of the relevant period, and prior to the right CTS release procedure," after which time there is medical evidence showing conditions that "do not rise to the level of limitation that Dr. Hatch opined." (AR 19).

At step four, ALJ Barnett found that through her date last insured, Ms. Pass was capable of performing her past relevant work as a clerk typist. (AR 20). ALJ Barnett nonetheless proceeded to step five, finding that on September 27, 2010, her alleged onset date, Ms. Pass was a "younger individual," and that she has since changed age category to "closely approaching advanced age." (AR 21). He further found that Ms. Pass has at least a high school education. (AR 21). ALJ Barnett found that considering VE Marnan's testimony and Ms. Pass's age, education, work experience, and assessed RFC, Ms. Pass could also perform other work as a photocopy machine operator, an office mail clerk, or an office cleaner. (AR 21). After finding Ms. Pass was able to perform work existing in significant numbers in the national economy, including her past work, ALJ Barnett concluded that as of her date last insured, she was "not disabled" as defined by 20 C.F.R. § 404.1520(f). (AR 22).

IV.   **Analysis**

In her Motion, Ms. Pass presents two arguments regarding error. *See* (Doc. 21 at

4-10). First, Ms. Pass contends that ALJ Barnett failed to properly consider the medical opinion of Dr. Hatch. *Id.* at 8. Specifically, Ms. Pass argues that ALJ Barnett's reasons for finding Dr. Hatch's opinion not persuasive are invalid, and that Dr. Hatch's opinion should have been afforded more weight as it is "supported by her examinations of Ms. Pass, is consistent with the longitudinal medical history discussed and considered by Dr. Hatch, is the result of three examinations, and comes from an orthopedic specialist." *Id.* at 8-9.

The Commissioner, in turn, argues that ALJ Barnett was correct in finding that Dr. Hatch's opinion was inconsistent with the longitudinal evidence of record, as the evidence from the relevant period shows Ms. Pass "got significant relief from surgeries, there are significant gaps in treatment, the objective evidence supports less limitations than what Plaintiff alleged, and her activity level was high." (Doc. 25 at 9). The Commissioner maintains that Ms. Pass's gaps in treatment and the gaps in her insurance coverage do not coincide during the relevant period, and that Ms. Pass is asking the Court to reweigh the evidence, which is impermissible. *Id.* at 9-10.

Second, Ms. Pass argues that ALJ Barnett failed to provide the required findings regarding the physical and mental demands of Ms. Pass's past relevant work, as required by SSR 82-62. (Doc. 21 at 9-10). Specifically, Ms. Pass contends that ALJ Barnett "merely asked [VE Marnan] to identify the [Dictionary of Occupational Titles ("DOT")] number for clerk typist and then whether an individual could return to that occupation with certain listed limitations," and that "[t]here was no further discussion about the physical and mental demands of the clerk typist position." *Id.* at 9. She thus argues that ALJ Barnett impermissibly delegated his fact-finding responsibilities to VE

Marnan. *Id.*

The Commissioner, meanwhile, maintains that VE Marnan actually "expressly identified the demands of [Ms. Pass's] past work as a clerk typist," and that even if VE Marnan's testimony had been incomplete, it was Ms. Pass's own counsel who failed to ask follow-up questions. (Doc. 25 at 12). The Commissioner contends that because ALJ Barnett then "summarized [VE Marnan's] testimony approvingly, in support of his own findings" at stage four, he did not improperly delegate his step four duties. *Id.* at 12-14.

### A. ALJ Barnett's Consideration of Dr. Hatch's Opinion

Ms. Pass argues that ALJ Barnett's reasons for finding Dr. Hatch's opinion not persuasive—that it was inconsistent with the record, that Ms. Pass "did not seek much treatment" afterwards, that Ms. Pass had "increased activity and travel," and that Dr. Hatch's opinion was "for a different program with different rules"—are all improper. (Doc. 21 at 5). First, Ms. Pass contends that Dr. Hatch's opinion was indeed consistent with the record, citing evidence that Ms. Pass had carpal tunnel syndrome, pain in both knees, as well as limitations on her ability to sit, write and grip. *Id.* at 6. Second, Ms. Pass admits there was a gap in treatment between July 2013 and February 2015, but maintains she has periodically lacked insurance coverage. *Id.* at 7. She also cites evidence of medical treatment of her right knee later in 2015, prior to her date last insured. *Id.* at 6. Third, Ms. Pass argues that ALJ Barnett failed to provide details on her travel, and that she has good days and bad days and can only do many of her activities on good days. *Id.* at 7-8. Finally, Ms. Pass contends that there is no requirement that a medical opinion relate to a Social Security claim in order for it to be considered persuasive. *Id.* at 8.

The Commissioner, in turn, argues that ALJ Barnett properly discounted Dr. Hatch's opinion. (Doc. 25 at 5-10). In particular, first, the Commissioner maintains that the record shows that Ms. Pass improved after her surgeries, and that the gap in her treatment between July 2013 and February 2015 suggests that she was not symptomatic prior to her date last insured. *Id.* at 6. Second, she contends that Ms. Pass's testimony regarding lack of insurance does not match up with the time frame of this gap, and that this thus does not explain her lack of treatment. *Id.* at 9-10. The Commissioner points out the record Ms. Pass cites is from January 11, 2018, well after the date last insured, and that Ms. Pass actually testified that while her shoulder impairment was not initially covered by her workers' compensation, "treatment was ultimately approved." *Id.* at 9-10; *see* (AR 47). Third, the Commissioner argues that ALJ Barnett reasonably concluded that Ms. Pass regularly engaged in a variety of activities, as the record shows she swam three to five times a week in 2010, performed tai chi every day in 2015, and participates in a writer's group once a week, among other activities. *Id.* at 7-8. The Commissioner thus contends that Ms. Pass "asks the Court to reweigh the evidence—which it cannot do." *Id.* at 10.

       i.     *Dr. Hatch's Opinion*

Dr. Hatch evaluated Ms. Pass for her workers' compensation claim three times— on February 23, 2011, on October 19, 2011, and on July 2, 2012. (AR 634, 647). The first two reports do not appear in the record, but the July 2012 report does. *See* (AR 634). In July of 2012, prior to Ms. Pass's right carpal tunnel surgery in 2013, Dr. Hatch found that Ms. Hatch had "multiple injuries and areas of complaints," including "bilateral knees, low back, left buttock, left hip, left leg, bilateral wrists, bilateral thumbs, bilateral

10

hands, left shoulder, left arm, neck, head, and neurologic and vascular systems." (AR 46, 634). She reported Ms. Pass experienced increased numbness in her right hand and wrist, and similar pain in her lower back and left shoulder. (AR 635).

Dr. Hatch reported that Ms. Pass had to modify her tai chi exercises due to pain in her left knee, and sometimes discontinue it for several days. (AR 635). Dr. Hatch indicated that Ms. Pass's left knee pain was "very unpredictable" and that Ms. Pass "cannot do anything for prolonged periods of time." (AR 636). She found that Ms. Pass's pain increased with "[g]ripping, grasping, pushing, pulling, lifting, carrying and using her hands and wrists." (AR 637). She found that she "cannot spend much time on the computer because of stiffness in both hands and pain . . . radiating to both arms." (AR 637). In terms of daily activities, she reported "no problems getting dressed and undressed" and that she "can wash dishes." (AR 637). She reported that "[h]eavier household chores are difficult" and that she "cannot kneel" and has "difficulty getting out of the shower/bathtub with her left knee." (AR 637). Upon review of Ms. Pass's medical history, Dr. Hatch concluded that from June 2011 until April 2012, Ms. Pass was "temporarily totally disabled." (AR 638-642).

Dr. Hatch concluded that Ms. Pass was precluded "halfway between no prolonged weight bearing and no weight bearing greater than part-time," and precluded from "prolonged stair climbing, walking over uneven ground, squatting, kneeling, crouching, crawling, [or] pivoting." (AR 650). She also found Ms. Pass was prohibited from "repetitive kneeling and squatting," and "forceful activities or prolonged typing/keyboarding/fine manipulation." (AR 650). She also stated that Ms. Pass had undergone "maximum medical improvement" and noted she suffered from "a 40% whole

person impairment." (AR 650, 653).

      *ii.    ALJ Barnett's Discussion of Dr. Hatch's Opinion*

In determining Ms. Pass's RFC, ALJ Barnett discussed Dr. Hatch's opinion in detail. (AR 19). He noted Dr. Hatch's assessment that Ms. Pass is precluded from "halfway between no prolonged weight bearing and no weight bearing greater than part-time; prolonged stair climbing, walking over uneven ground, squatting, kneeling, crouching, crawling, pivoting, or other activities involving comparable physical effort; repetitive kneeling and squatting; forceful activities or prolonged typing, keyboarding, or fine manipulations with her bilateral hands." (AR 19). He included Dr. Hatch's assessment of "an overall 40% whole person impairment." (AR 19). He found Dr. Hatch's opinion to be "generally supported by the referenced evidence, including [Ms. Pass's] knee operation and the CTS release procedure . . . as well as clinical findings from the in-person physical examination." (AR 19). However, he also found the opinion "not entirely consistent with the longitudinal evidence of record, including subsequent records and testimony at the hearing," and noted that the opinion was written "approximately four years before the end of the relevant period, and prior to [the] right CTS release procedure," (AR 19), which took place on January 28, 2013. (AR 46).

ALJ Barnett noted that since the examination by Dr. Hatch, Ms. Pass "did not seek much by way of regular or ongoing treatments . . . beyond medications, suggesting that her symptoms were not as limiting as indicated." (AR 19). He also noted "increased activity and travel," and found Dr. Hatch's opinion "vague" and noted it "does not provide limitations with specificity to indicate [Ms. Pass's] limitations in a typical workday." (AR 19). As to the percentage of impairment, ALJ Barnett noted that the opinion was

authored in connection with "different programmatic rules for determining an individual's impairment than those used by the Agency," and as to Dr. Hatch's opining that Ms. Pass was "temporarily totally disabled," ALJ Barnett noted that this is "a statement on an issue reserved to the Commissioner." (AR 19). For these reasons, ALJ Barnett found that Dr. Hatch's opinion was not persuasive.

> iii.  *Whether ALJ Barnett's Finding that Dr. Hatch's Opinion was Not Persuasive was Error*

A medical opinion is a "statement from a medical source about what [a claimant] can do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in listed work-related abilities. 20 C.F.R. § 404.1513(a)(2)(i)-(iv). Conversely, medical source statements on issues that are reserved for the Commissioner, such as the ultimate question of disability, are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c). An ALJ is required to articulate how persuasive she finds all of the medical opinions and prior administrative medical findings in a given case. 20 C.F.R. § 404.1520c(b).

The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Ms. Pass filed her claim on May 24, 2018, the later regulations apply to this matter.

The new regulations set forth five factors an ALJ must consider in evaluating medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion" including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). While an ALJ must consider these five factors when evaluating medical opinion evidence, an ALJ is only required to articulate her consideration of two of those factors: (1) supportability and (2) consistency with the record. 20 C.F.R. § 404.1520c(b)(2). If differing medical opinions are equally well-supported by and consistent with the record, the ALJ must also "articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions." 20 C.F.R. § 404.1520c(b)(3). Failure to comply with these requirements constitutes legal error. *See*, *e.g.*, *Lovato v. Saul,* 1:20-CV-00187 KRS, 2021 WL 2894733, at *5 (D.N.M. July 9, 2021).

It is not necessary for an ALJ to delineate the direct correspondence between an RFC finding and a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Furthermore, the ALJ must at least explain his decision in a manner that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley*, 373 F.3d at 1119 (citation

omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Guadagnoli v. Colvin*, 1:15-cv-0214 MCA/LF, 2016 WL 9777190, at *6 (D.N.M. June 16, 2016), *report and recommendation adopted*, 2016 WL 10179287 (D.N.M. July 8, 2016) (finding error where the ALJ's analysis left the Court "to guess at what overall medical evidence the ALJ relied on to come to [a] middle ground") (internal quotation marks omitted). The Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

Here, ALJ Barnett articulated how persuasive he found Dr. Hatch's opinion. (AR 19); *see* 20 C.F.R. § 404.1520c(b). He also explained his reasoning for finding Dr. Hatch's opinion not persuasive, and discussed the opinion's supportability and consistency with the record, citing specific medical records such as those documenting the subsequent surgery on Ms. Pass's right wrist in January 2013, an emergency visit in October 2015, and other medical evidence of record. (AR 19, 46); *see* 20 C.F.R. § 404.1520c(b)(2). Additionally, he discussed parts of the medical opinion that were favorable to a finding of disability, and explained how the inconsistencies between Dr. Hatch's opinion and other parts of the record were resolved. (AR 19); *see* SSR 96-8p, 1996 WL 374184, at *7.

Ms. Pass objects to ALJ Barnett's reasons for finding Dr. Hatch's opinion unpersuasive. (Doc. 21 at 5). Ms. Pass cites *Berryhill v. Barnhart*, 64 F. App'x 196 (10th Cir. 2003), for the proposition that the "minimal sporadic activities" Ms. Pass engaged in "do not prove that Ms. Pass is capable of performing substantial gainful activity." (Doc. 21 at 8). However, in that case, the alleged error was that the ALJ "failed to consider

properly the effect [the claimant's] headaches have on her ability to work on a consistent basis," not failure to properly consider a medical opinion under the new regulations. *Berryhill*, 64 F. App'x at 198. It is therefore inapposite. Additionally, ALJ Barnett based his evaluation of Dr. Hatch's opinion on more than simply Ms. Pass's increased activities. *See* (AR 10-22). He explained that he found Dr. Hatch's opinion was outdated, as it was authored four years prior to the end of the relevant period, and prior to her right wrist surgery. (AR 19). He also noted that Dr. Hatch did not opine on Ms. Pass's specific vocational limitations. (AR 19). Further, as the Commissioner notes, it is not the Court's role to reweigh the evidence of Ms. Pass's activities. *See Thomas v. Berryhill*, 685 F. App'x 659, 661 (10th Cir. 2017) ("Although the record also contains evidence that [the claimant's] daily activities are more limited, the ALJ is in the best position to resolve such conflicts in the evidence."); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (the Court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.").

Ms. Pass also argues that her gap in medical treatment does not support ALJ Barnett's interpretation that she was less symptomatic between July 2013 and February 2015, but instead is explained by her periodic lapses in insurance. (Doc. 21 at 1); *see* SSR 82-59 (excusing failure to follow treatment if there is "justifiable cause"); SSR 96-7p (ALJ must not draw inferences from failure to seek medical treatment without considering explanation for such failure); *Alarid v. Colvin*, 590 F. App'x 789, 793 (10th Cir. 2014) ("a claimant's inability to pay for treatment can constitute an acceptable justification for failing to follow prescribed treatment"). However, Ms. Pass does not

16

appear to allege that her insurance gaps completely explain the gap in treatment between July 2013 and February 2015. (Doc. 21 at 7). Instead, she claims that ALJ Barnett "failed to consider that Ms. Pass testified that her shoulder impairment was not covered by her workers' compensation and that on January 11, 2018[,] Ms. Pass reported to Presbyterian Hospital that she had not been seen due to lack of insurance." *Id.* As the Commissioner points out, the 2018 note is not relevant to the period prior to Ms. Pass's date last insured, and Ms. Pass actually testified that workers' compensation *did* eventually cover her shoulder impairment. (AR 47); *see* (Doc. 25 at 9-10). For these reasons, her argument on this point is unavailing. *See Alarid*, 590 F. App'x at 793 (inability to pay does not provide a justification where claimant failed to reference any evidence that he failed to pursue treatment *because* of said inability).

Overall, though Ms. Pass disputes ALJ Barnett's responses, he successfully complied with the new regulations when he discussed the opinion's supportability and consistency with the record, citing to specific evidence in the record. 20 C.F.R. § 404.1520c(b)(2). He was not required to explicitly articulate anything further. *Id.* The Court therefore finds that ALJ Barnett's discussion of Dr. Hatch's opinion was sufficiently detailed for the Court to follow, and that ALJ Barnett properly considered Dr. Hatch's opinion. *See Langley*, 373 F.3d at 1119; *Guadagnoli,* 2016 WL 9777190, at *6. This, therefore, was not error.

### B.  Whether ALJ Barnett Complied with SSR 82-62

Ms. Pass also argues that ALJ Barnett failed to comply with SSR 82-62 by failing to make specific findings regarding the physical and mental demands of Ms. Pass's past relevant work. (Doc. 21 at 9-10). Ms. Pass contends that ALJ Barnett should have

asked VE Marnan a hypothetical which included the actual demands of her past work, and in failing to do so impermissibly delegated his fact-finding responsibilities to VE Marnan. *Id.* Ms. Pass maintains that the Tenth Circuit expressly prohibited exactly this type of delegation in *Sissom v. Colvin*, 512 F. App'x 762 (10th Cir. 2013). *Id.*

The Commissioner, in turn, argues that it was Ms. Pass's burden to prove she was unable to perform her past relevant work, both as she actually performed it and as it was generally performed, and that she did not meet this burden. (Doc. 25 at 11). The Commissioner notes that VE Marnan expressly identified the demands of Ms. Pass's past work as a clerk typist in his testimony, which ALJ Barnett then relied upon. *Id.* at 12. The Commissioner cites *Adcock v. Comm'r*, 748 F. App'x 842 (10th Cir. 2018), for the proposition that "an ALJ may cite with approval a vocational expert's testimony concerning the demands of a claimant's past relevant work and may rely on that expert's testimony to find that the claimant's RFC is consistent with that past relevant work." *Id.* at 13. She therefore argues that ALJ Barnett did not engage in impermissible delegation of his step four duties. *Id.*

An ALJ must complete three phases of evaluation at step four: (1) the ALJ must determine a claimant's physical and mental RFC; (2) she must determine the physical and mental demands of the claimant's past relevant work; and (3) she must determine whether the claimant has the ability to meet the job demands found in phase two, despite the limitations found in phase one. *Doyal*, 331 F.3d at 760 (citing *Winfrey*, 92 F.3d at 1023). "[A] VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work. For example, if the ALJ determines that the claimant's mental impairment affects his ability to concentrate, the ALJ may ask the

18

VE for information about the level of concentration necessary to perform the claimant's past relevant work." *Winfrey*, 92 F.3d at 1025. Although the ALJ may rely on information supplied by the VE at step four, the ALJ must make the required findings on the record. *Id.* 20 C.F.R. § 404.1560(b)(2). "It is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the vocational expert, because the 'remainder of the step four analysis takes place in the VE's head' and 'we are left with nothing to review." *Doyal*, 331 F.3d at 761 (quoting *Winfrey,* 92 F.3d at 1025).

Ms. Pass cites *Sissom v. Colvin*, 512 F. App'x 762 (10th Cir. 2013), for the proposition that an ALJ fails to comply with SSR 82-62 if she fails to (1) ask the VE a hypothetical which includes the actual demands of the claimant's past work and then (2) make specific findings regarding the physical and mental demands of a claimant's past relevant work, as doing so impermissibly delegates the ALJ's fact-finding responsibilities to the VE. (Doc. 21 at 9-10). In *Sissom v. Colvin*, however, the ALJ "did not make *any* factual findings comparing [the claimant's] limitations to the demands of her [past relevant work]." *Sissom*, 512 F. App'x at 770 (emphasis added).

Here, in contrast, ALJ Barnett made specific findings about the demands of Ms. Pass's past work. (AR 20). In particular, ALJ Barnett found that her past relevant work as a clerk typist corresponded to DOT code 203.362-010, SVP 4, and "sedentary exertional work as actually and generally performed." (AR 20). This was sufficient to describe the demands of Ms. Pass's past relevant work. *See Adcock v. Comm'r, SSA*, 748 F. App'x 842, 847 (10th Cir. 2018) (ALJ's discussion of past relevant work was

adequate when ALJ mentioned the position, DOT code, SVP level, and exertional level as generally and actually performed).

ALJ Barnett also stated that he "relied on testimony from the vocational expert," which Ms. Pass argues represents an inadequate discussion of the demands of her past work. (AR 20); (Doc. 21 at 9). When faced with a similar situation in *Doyal v. Barnhart,* the Tenth Circuit held that the ALJ did not improperly delegate his fact-finding responsibilities to the vocational expert. Rather, "he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis." *Doyal*, 331 F.3d at 761. The Tenth Circuit found that "[t]here was nothing improper about this." *Id*.

ALJ Barnett similarly relied upon VE Marnan's testimony in this case. He made specific findings with regard to Ms. Pass's limitations based on the medical evidence, and presented these limitations to the VE in his hypothetical at the hearing, stating that the hypothetical individual is "limited to the full range of light exertional work, as defined by the regulations; further limited to occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent bilateral handling and fingering; occasional left arm overhead reaching." (AR 57). VE Marnan then testified that an individual with such limitations could return to Ms. Pass's past work as a clerk typist. (AR 57). Then, in his decision, ALJ Barnett referenced this testimony by stating that "[w]hen asked whether a hypothetical person with [Ms. Pass's] age, education, work experience, and residual functional capacity would be able to perform the aforementioned past relevant work, [VE

Marnan] testified that such a hypothetical person would be able to perform [Ms. Pass's] past work." (AR 20).

It is thus clear from the record that ALJ Barnett made the requisite findings with regard to the demands of Ms. Pass's past work, and properly referred to VE Marnan's testimony in support of his own findings. (AR 20); (AR 56-57); *see Doyal*, 331 F.3d at 761 (ALJ did not improperly delegate his step four duties to the VE where "he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis"); *Adcock*, 748 F. App'x at 847; *Romero v. Berryhill*, 1:17-cv-373 JB/JHR, 2018 WL 566829, at *17 (D.N.M. Jan. 26, 2018), *report and recommendation adopted*, 2018 WL 3199254 (D.N.M. June 29, 2018) ("[T]he Court will not reverse the ALJ for relying on the testimony of the VE when determining the demands of [claimant's] past relevant work."). Therefore, ALJ Barnett did not err in his reliance on VE Marnan's testimony regarding Ms. Pass's past relevant work.

## V.     Conclusion

For the previously stated reasons, the Court finds that ALJ Barnett did not commit the errors alleged by Ms. Pass. In addition, the Court finds that substantial evidence supports ALJ Barnett's determinations challenged by Ms. Pass.

**IT IS FURTHER ORDERED** that Ms. Pass's *Motion to Reverse and Remand, with Supporting Memorandum*, (Doc. 21), is **DENIED** and the case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE